Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 310 - 2 | **DATE** | 2/18/2003 |
| **CASE TITLE** | USA vs. Citizens For George Ryan, Sr. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to release its funds from pretrial restraint (Doc. No. 93-1) is granted in part and denied in part. Enter Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | FEB 1 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 172 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/18/2003 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 02 CR 310 |
| | ) | |
| SCOTT FAWELL, | ) | Judge Rebecca R. Pallmeyer |
| CITIZENS FOR GEORGE RYAN, SR., | ) | |
| RICHARD JULIANO | ) | |

DOCKETED

FEB 19 2003

## MEMORANDUM OPINION AND ORDER

On April 2, 2002, a grand jury returned a ten-count indictment charging Defendants Citizens for George Ryan, Sr., ("CFR") and its campaign manager, Defendant Scott Fawell, with violations of RICO. The indictment alleges that from 1992 until 1999, the RICO enterprise defrauded the people of Illinois by using personnel and resources of the Illinois Secretary of State's office (hereinafter sometimes "SOS" or "SOS Office") to conduct political campaigns for then-Secretary of State George Ryan. Several weeks after the indictment was returned, the government moved pursuant to the forfeiture provisions of the RICO statute, 18 U.S.C. § 1983(d)(1)(A), for pre-trial restraint of $1.0 million in funds in the control of Defendant Citizens for Ryan. The government supported its motion with a lengthy proffer of evidence that had been presented to the grand jury and argued that the evidence disclosed six categories of assets subject to forfeiture under the statute.

On June 18, 2002, this court granted the government's motion. Some months later, CFR moved the court to lift the restraint. The court recognizes that a criminal defendant whose property has been frozen pursuant to a post-indictment, pre-trial restraining order may ask that the restraint be lifted by showing that the grand jury erred in determining that there was probable cause to believe that the restrained assets are forfeitable and, in addition, that the defendant has no other assets with which to pay the defendant's legal expenses. In its motion, CFR has not addressed the issue of what assets are available to pay its lawyers. CFR has, however, raised a number of

172

challenges to the government's claim that $1 million of its funds are subject to restraint prior to trial. Among these arguments, CFR contends, first, that the court's order improperly restrains "substitute" assets, which may be subject to forfeiture after a judgment of conviction, pursuant to § 1963(m), but are not properly restrained prior to trial. CFR argues, further, that certain of the assets frozen by the court's order may represent amounts that might ultimately be the subject of a restitution order in favor of the Illinois Secretary of State's Office, but may not be restrained because they are not traceable to any racketeering offense. In addition, CFR contends that the government cannot establish that but for any racketeering activity, CFR would have spent amounts the government claims as forfeitable – that is, CFR urges that the government has not shown that, if CFR had not allegedly misused the personnel and resources of the SOS, CFR would instead have paid volunteer workers amounts paid them as salaries by SOS; would have purchased supplies and equipment it was able to obtain from SOS; or would have spent funds recovered by SOS workers as raises and promotions in consideration of their CFR campaign work.

CFR's motion raises difficult issues, many of which the court is unable to address in depth at this time. For the reasons explained below, however, the court concludes that at least a significant portion of the amounts paid by SOS to campaign workers as raises and promotions (referred to by the parties as "Category 5 assets") are not properly subject to pre-trial forfeiture. The court is therefore prepared to lift the restraint on some portion of CFR's Category 5 assets pending the outcome of this case. The court concludes, in addition, that the sums that the government claims represent the cost of a shredder, reams of copy paper, and other SOS office equipment (referred to as "Category 3 assets") constitute "substitute assets" which are also not subject to pretrial forfeiture.

## DISCUSSION

The RICO forfeiture provisions give the government significant powers to challenge

"organized crime and its economic roots" by providing "enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Russello v. United States*, 464 U.S. 16, 26-27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983) (citing Pub.L. No. 91-452, 84 Stat. 922, 923 (1970)) (quotations omitted). One of the remedies, established in 18 U.S.C. § 1963(a), imposes upon any person who violates any provision of 18 U.S.C. § 1962 the obligation to forfeit to the United States:

> (1) any interest the person has acquired or maintained in violation of section 1962;
>
> (2) any--
> - (A) interest in;
> - (B) security of;
> - (C) claim against; or
> - (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

18 U.S.C. § 1963(a). The statute reaches further: To the extent that assets linked to a defendant's racketeering activity are unavailable for forfeiture as a result of any act or omission of the defendant, other substitute assets of the defendant may, in certain circumstances, be forfeited in an amount up to the value of the directly forfeitable assets. 18 U.S.C. § 1963(m). In addition, in order to preserve forfeitable assets pending trial, a court may, upon application of the United States,

> enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section--
> - (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

18 U.S.C. § 1963(d)(1)(A).

The parties agree generally that 18 U.S.C. § 1963(d)(1)(A), which refers only to "subsection (a)" assets, does not permit the post-indictment, pre-trial restraint of substitute assets. While the Seventh Circuit has not yet addressed this issue, a majority of the courts of appeals which have considered the question have held that pre-trial restraint of substitute assets is not permitted under the statute. See *United States v Gotti*, 155 F.3d 144 (2d Cir. 1998); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996); *United States v. Ripinsky*, 20 F.3d 359, 365 (9th Cir. 1994); *In re Assets of Martin*, 1 F.3d 1351, 1359-60 (3d Cir. 1993); *United States v. Floyd*, 992 F.2d 498, 502 (5th Cir. 1993). Therefore, if the court concludes that any of the assets that have been restrained by its June 18 order constitute substitute assets, the restraint should be lifted with respect to that portion of CFR's funds.

## A.   Standard for Review of CFR's Motion to Lift the Freeze

As noted at the outset, a criminal defendant whose property has been frozen by a pre-trial restraining order may obtain relief from that order upon a proper showing that the grand jury erred in determining that there was probable cause to believe that the restrained assets were forfeitable. *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998). To obtain the relief it seeks here, CFR must make a two-part showing. First, as the Seventh Circuit explained in *United States v. Moya-Gomez*, 860 F.2d 706, 731 (7th Cir. 1988), CFR must satisfy the court that it has no other assets with which to pay its legal expenses. Second, CFR is required to demonstrate that the grand jury erred in concluding that the assets at issue were forfeitable pursuant to Section 1963(a). In considering this issue, the *Moya-Gomez* court cautioned, the court may not inquire as to the validity of the indictment and must accept that "'the probable cause established in the indictment or information is . . . determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.'" *Id.* at 728, quoting S.Rep. No. 225, 98th Cong., 2d Sess. 193, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3386. Thus, although the trial in this case

has begun and the petit jury must decide whether the government has met its burden of proof, for purposes of this motion the grand jury's probable cause determinations bind the court on any issues relating to the merits of the government's case against CFR.

CFR has not made a showing that it has no assets to pay counsel. The court therefore does not have the authority on this record to lift the restraint. Nevertheless, CFR has made extensive legal arguments concerning the second prong of the test, arguing that for a number of reasons, the assets restrained here are not in fact subject to pre-trial forfeiture. The government submitted a lengthy and detailed factual proffer in support of the restraint and has responded briefly to the legal arguments in CFR's motion, as well. Having reviewed this briefing, the court concludes, as addressed more fully below, that it is likely that at least some portion of the Category 5 assets, and all of the Category 3 assets, are not subject to forfeiture under Section 1963(a) before trial is concluded. If CFR does request a hearing, or demonstrates in some other way that its Sixth Amendment right to counsel has been implicated by the pre-trial restraint, the court anticipates it will lift the freeze on these assets.

## B.     The Government's Allegations

The April 2, 2002 indictment charges CFR and Fawell with defrauding the people of Illinois by using personnel and resources of the Illinois SOS Office to conduct political campaigns for George Ryan. Following the substantive charges of the indictment, the indictment contains forfeiture allegations. The forfeiture allegations enumerate six "interests and property" obtained by defendants Fawell and CFR, including:

1. All salaries and related benefits and employer contributions pertaining to the Diverted Employees who worked primarily or exclusively for CITIZENS FOR RYAN during the February through August 1998 period, including approximately ten employees working out of the Chicago, Homewood and Springfield CITIZENS FOR RYAN officers;

2. All salaries and related benefits and employer contributions pertaining to SOS Office employees who were directed or authorized to perform and did

5

perform CITIZENS FOR RYAN-related campaign work on state time during the 1994 primary effort on behalf of State Senator A; the 1994 reelection, the 1995-96 presidential primary campaign, the 1996 House races and the 1998 gubernatorial campaign;

3. Assets and resources diverted from the Secretary of State's office for purposes of use by CITIZENS FOR RYAN;

4. Campaign contributions, including fundraiser ticket sales, solicited and obtained by SOS Office employees acting as agents of CITIZENS FOR RYAN, that were procured through official misconduct and other illegal means;

5. The value of all other SOS Office employee benefits provided to employees of the Secretary of State's office in return for campaign work performed on behalf of CITIZENS FOR RYAN, including promotions, raises and other benefits from 1994 through 1998.[1]

(Indictment at 78-9.) The government alleges that the entirety of the CFR accounts – whether or not the funds themselves are tainted – are subject to forfeiture because the Defendants used them to "establish, operate, control, conduct or participate in" the conduct of the affairs of the enterprise. (Government's Proffer at 4.)

Of particular concern to the court is Category 5. Referred to by the government as "Campaign Raises and Promotions Following the 1994 Reelection," the government argues that at least $455,931.66 should be forfeited from CFR's "artificially inflated bank balances." (Government's Proffer at 4.) Specifically, the government alleges numerous campaign coordinators (who were SOS employees) devoted substantial time to benefit CFR and did so, on many occasions, on state time. After the 1994 elections, when George Ryan was reelected Secretary of State of Illinois, the government claims there was a systematic effort – orchestrated by Fawell – to reward these SOS employees who had coordinated aspects of the Ryan campaign. After the successful election, the government claims that Fawell directed Richard Juliano (who served as CFR campaign manager) to compile lists of SOS employees who performed well for the

---

[1] The government's sixth category is alleged to relate only to Defendant Fawell, and thus is not relevant to CFR's motion.

6

campaign. Juliano then allegedly coordinated and participated in numerous meetings with select SOS employees who had made substantial efforts on behalf of CFR. Fawell conducted these meetings, at which the government alleges he stated his intent to provide SOS Office employees benefits as a reward for their CFR campaign efforts, primarily to those who served as regional and zone coordinators. The government alleges that the benefits accorded to the SOS employees – in the form of raises and promotions – were substantial.

The government also alleges that following Ryan's successful 1998 campaign for governor, Fawell again set in motion a process to reward certain CFR coordinators, all of whom were SOS Office employees, with post-election raises. Juliano testified that this effort was coordinated through another high-ranking CFR agent. These raises went into effect just days before the rewarded SOS employees were scheduled to leave office. The effect of these last-minute raises was to raise the base salaries for active CFR participants, with the result that they enjoyed a higher base salary in any state job they took after leaving the SOS office. Many of these individuals did remain in state employment, taking positions in Governor Ryan's new administration.

The government maintains that its estimate of $455,931.66 is a conservative approximation of the total campaign-based raises and promotions to SOS Office personnel following the 1994 and 1998 elections, and argues that the amount should be forfeited pursuant to Sections 1963(a)(1)(2) and (3) of the RICO forfeiture statute. In calculating this amount, the government relied substantially on testimony and information provided by high-ranking agents of CFR, including Juliano, who has pleaded guilty to Count Two of the instant indictment and is awaiting sentencing. In addition, documentary evidence including inter-office memoranda, personnel records, personal notes and correspondence form the basis of the government's monetary estimate. (Government's Proffer at 8.)

**C.     Are the Category 5 Assets Forfeitable under § 1963(a)?**

Section 1963 was intended to be a powerful tool against what was perceived as a significant criminal threat, and the court is directed to construe its provisions liberally. See *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). But the Seventh Circuit has long maintained that close attention should be paid to the structure of the forfeiture provisions and particularly to the separate modes of operation of the subsections. *United States v. Horak,* 833 F.2d 1235, 1243 (7th Cir. 1987). The government takes the position that all three prongs of the forfeiture statute justify the seizure of the Category 5 assets. CFR challenges this position on several grounds, but the court focuses particularly here on CFR's causation argument. Specifically, CFR contends that the government has not demonstrated the necessary causal link between the raises and promotions allegedly given to SOS employees, and the money in CFR's bank accounts. The court will discuss each subsection of the statute in turn.

1. **§ 1963(a)(1)**

The first prong of the RICO forfeiture provision provides that "any interest" the person (or in this case, organization) has acquired or maintained in violation of Section 1962 (the substantive provision of the RICO statute) must be forfeited to the United States. 18 U.S.C. § 1963(a)(1). The focus of Section (a)(1) is therefore on the "racketeering activity," and it is apparently irrelevant whether such interests are part of the charged enterprise. In *United States v. Horak,* 833 F.2d 1235 (7th Cir. 1987), defendant was convicted of RICO violations in connection with a scheme in which he bribed village officials to award his company a garbage collection contract. The district court ordered forfeiture of the defendant's job, salary, bonuses, corporate profit sharing and pension plans. On appeal from that order, the Seventh Circuit was not satisfied that the evidence supported forfeiture of the entirety of defendant's salary, bonuses and corporate profit-sharing and pension plans earned during the period he engaged in racketeering. Instead, the court remanded, directing the district court to determine what portion of the defendant's interests would not have

8

been acquired or maintained "but for" his racketeering activities under Section 1963(a)(1). *Id.* at 1242-43. Under the "but for" test endorsed by *Horak*, "in order to win a forfeiture order, the government must show on remand that Horak's racketeering activities were a cause in fact of the acquisition or maintenance of these interests or some portion of them." *Id.* at 1243.

The *Horak* court recognized that the Supreme Court has given the word "interest" in the RICO statute a broad reading. In *Russello,* the Supreme Court noted that the term is not specifically defined in the statute and observed that dictionary definitions of "interest" and ordinary understandings of that term comprehend all forms of real and personal property, including profits and proceeds. *Russello,* 464 U.S. at 21. Before the profits of an unlawful RICO enterprise are divided, each participant may be said to own an "interest" in the ill-gotten gains. "After distribution, each will have a possessory interest in currency or other items so distributed." *Id.* at 22. Thus, the insurance proceeds that the RICO defendant had recovered as a result of his arson activities constituted an "interest" within the meaning of § 1963(a)(1) and were therefore subject to forfeiture.

The court is not satisfied that the government has established such a causal link between the Category 5 funds in CFR's bank accounts and the raises and promotions given to SOS employees.[2] The SOS employees who allegedly received raises were CFR volunteers; there has been no showing that CFR had a commitment or obligation to reward them for their efforts after the campaign's conclusion. Campaign workers in many instances worked on state time and were therefore paid by the state for at least some of their campaign work (the focus of Categories 1 and 2 of the government's forfeiture request). The 1994 SOS Office raises given as rewards for that work may well have encouraged state workers to be involved in subsequent campaigns, but they did not "defray" or "subsidize" any CFR expenses. For example, the government has not asserted

---

[2] The government's brief does not address CFR's specific contentions regarding Category 5 under 1963(a), opting instead to argue generally that all of the funds in CFR's accounts should remain restrained.

9

that, but for the raises and promotions, CFR would have had to hire additional campaign workers, instead of relying on volunteers. Nor has the government suggested that in the absence of the raises and promotions, CFR would have rewarded state workers out of its own pockets, to the tune of approximately $450,000 claimed in Category 5. Notably, the government has not correlated its figure with any of CFR's financial records, forecasts, or anything that would indicate it represented a "savings" to the campaign. It is not uncommon for many campaign workers to serve on an entirely voluntary basis.[3] Some may have refused to serve absent the promise of a reward, but the indictment does not contain such allegations. In short, CFR was able to reward its friends with another entity's money, but the court is not satisfied that CFR's bank accounts were "artificially enhanced" as a result. The court is therefore not prepared to conclude that all of the Category 5 money represents an "interest" in the alleged racketeering activities.

### 2. § 1963(a)(3)

The analysis under the third prong of the RICO statute follows that of the first, and thus the court addresses this third subsection next. Subsection (a)(3) provides that any property or proceeds obtained directly or indirectly from racketeering activity in violation of Section 1962 must be forfeited to the United States. 18 U.S.C. § 1963(a)(3). The legislative history of the statute indicates that the purpose of adding the "proceeds" provision in this subsection was to clarify that which the Supreme Court subsequently held in *Russello:* that the term "any interest" as used in Section 1963(a)(1) includes any interest in proceeds obtained from racketeering activity. *United States v. Robinson,* 1991 WL 44832, *3 (N.D. Ill. Mar. 15, 1991), *vacated on other grounds by* 8 F.3d 418 (7th Cir. 1993), *citing* 1984 U.S. Code Cong. & Admin. News (98 Stat.) 3382. Therefore, subsection (a)(3) is basically a subset of (a)(1), and the same "but for" standard set forth in *Horak*

---

[3] The court is aware that compensation for campaign volunteers often comes in the form of a position in a newly-elected official's administration or office. But this does not alter the fact that the campaign does not pay them for their work.

10

with respect to subsection (a)(1) applies. *Robinson,* 1991 WL 44832, \*3.

Given that "proceeds" and "property" are subsets of "interest," see *Russello,* 464 U.S. at 21, the court concludes that the Category 5 funds are not subject to pre-trial restraint under this subsection either. Case law analyzing this subsection supports this conclusion. In *United States v. Elliott,* 727 F.Supp. 1126 (N.D. Ill. 1989), the defendant was convicted of, among other things, a RICO violation for misusing confidential client information from his law firm for his personal benefit in nine sets of securities transactions. Judge Aspen of this court held that the commissions paid to Elliott's brokerage firm (Schwab) on the stock transactions, and interest charged by Schwab on the loan used to purchase the securities, should not be included in the proceeds Elliott must forfeit under Section 1963(a)(3), because he never received the money represented by the commissions and interest. *Id.* at 1129. The court acknowledged the Seventh Circuit's instruction, addressing an earlier version of the RICO forfeiture provision, that "[i]n order to truly separate the racketeer from his dishonest gains, . . . [RICO] requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession." *United States v. Ginsburg,* 773 F.2d 798, 802 (7th Cir. 1985) (*en banc*). In *Ginsburg,* the Seventh Circuit affirmed forfeiture of $450,000 the defendant had recovered in legal fees from clients for whom he had obtained favorable results by paying bribes, noting that "[e]very dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes." *Id.* at 803. Judge Aspen pointed out that in the case before him, defendant Elliott had never himself received the money represented by the commissions and interest for which the government sought forfeiture, and therefore never had it available to spend on food, charity, or anything else. *Elliott,* 727 F.Supp. at 1129.

CFR's situation is more analogous to Elliott's than the defendant in *Ginsburg.* In a sense, the SOS employees who received the raises and bonuses are analogous to Schwab, the brokerage

11

firm in *Elliott* that received the commissions and interest. The *Elliott* court recognized that the defendant could not have made the money he did without paying the commission and interest fees. *Elliott,* 727 F.Supp. at 1129. And here, the government may successfully prove that CFR would not have been as successful as it was, had SOS Office employees not been encouraged in the form of raises and promotions to do campaign work. The fact remains, however, that the $455,931.66 the government claims in Category 5 was never deposited into any of CFR's bank accounts. Accordingly, the court concludes that Category 5 does not represent "proceeds" that CFR must forfeit under Section 1963(a)(3).

### 3. § 1963(a)(2)

Section (a)(2), finally, focuses on the "enterprise," not the specific racketeering activity, and mandates forfeiture of the defendant's entire interest in, security of, claims against, and property and contractual rights which afforded a source of influence over the RICO enterprise itself. 18 U.S.C. § 1963(a)(2); *United States v. Sarbello,* 985 F.2d 716, 722 (3d Cir. 1993). Importantly, under § 1963(a)(2), the interest subject to forfeiture need not itself have been illegally acquired, . Thus, as the Supreme Court has pointed out, this subsection reaches interests that are not forfeitable under other subsections of the statute. *Russello,* 464 U.S. at 24, 104 S.Ct. at 301. In *Sarbello,* for example, defendants owned a corporation through which they paid bribes to fend off union organizing and kickbacks to obtain business contracts, but also conducted legitimate business. On appeal from an order of forfeiture of defendants' entire interest in the corporation, the Third Circuit noted that "§ 1963(a)(2) mandates forfeiture of the defendant's entire interest in the RICO enterprise itself." *Id.* at 722. The court concluded, nevertheless, that where the jury had concluded that the "criminal taint" to the corporation's activities and to the defendants' interests was no more than 10%, defendants were entitled to a detailed "proportionality analysis" before forfeiture of the entire corporation could be ordered. *Id.* at 724.

Here, however, as explained previously, the court has concluded that the Category 5 funds do not constitute an "interest" under subsection (a)(1). The raises and promotions were paid or awarded by the SOS office to SOS employees. No amounts relating to these awards ever passed through CFR's accounts. Therefore, the government's proffer does not satisfy the court that Category 5 funds constitute property of or an interest in the alleged enterprise.

### 4. Rewards involving Exempt Employees

Even if the Category 5 assets are otherwise subject to forfeiture, CFR contends the government can not establish that all of the amounts reflecting raises and promotions are a product of an unlawful conspiracy. In fact, as the government itself concedes, courts have long recognized that elected officials may properly choose to surround themselves with loyal, like-minded subordinates in positions requiring political loyalty or confidentiality. *Thompson v. Illinois Department of Professional Regulation,* 300 F.3d 750, 755 (7th Cir. 2002), *citing Elrod v. Burns,* 427 U.S. 347, 367-73 (1976). Cases analyzing these issues often involve challenges to the termination of subordinates, but their rationale is instructive in this context as well. Elected officials may not only punish but may also promote and reward members of their staffs for political reasons. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 78 (1990). On the other hand, promotions, transfers, and recalls after layoffs of low-level public employees based on political affiliation or support violates the First Amendment. *Id.* at 74.

When an employee challenges an employment decision as improperly politically motivated, it is the employer who bears the burden of establishing that the job is a confidential or policymaking position which would justify politically motivated employment actions. *Thompson,* 300 F.3d at 756. The court assumes that the grand jury's probable cause determination establishes, for purposes of this decision, that CFR violated the law in engineering the awards of raises and promotions. The court nevertheless observes that neither CFR nor the government has furnished information which

13

which would allow the court to determine the extent to which some of the the alleged raises and promotions were given to persons in "*Rutan* exempt" positions. CFR notes that many of the SOS employees listed in the government's proffer held or were promoted to Director, Deputy Director, and other Front Office positions. Our Court of Appeals has cautioned, however, that "[j]ob title and supervisory authority do not necessarily transform an employee into a policymaker because the employee 'may have only limited and well-defined objectives'." *Thompson,* 300 F.3d at 756, *citing Elrod,* 427 U.S. at 367-68. The court observes, further, that promotions of faithful campaign workers to high-level positions just days or weeks before the incumbent director departs is inconsistent with any notion that loyalty is a legitimate employment qualification. Still, where the issue has not been fully briefed or addressed by the parties, the court is willing to consider whether at least some of the Category 5 raises and bonuses were legitimately awarded and thus not subject to forfeiture under Section 1963(a).

### 5. Restitution of Category 5 Raises and Promotions

The allegations of the indictment and the government's proffer demonstrate that CFR used funds belonging to another party – SOS – to reward its friends for their campaign efforts. If the jury finds CFR guilty, it is likely that a substantial order of restitution will be part of the sentence in this case. Restitution is "designed to compensate the victim for the harm suffered because of the defendant's criminal conduct." *United States v. Chay,* 281 F.3d 682, 686 (7th Cir. 2002), citing *United States v. Behrman,* 235 F.3d 1049, 1052-53 (7th Cir. 2000). Sentencing orders routinely include both forfeiture and restitution provisions. *United States v. Emerson,* 128 F.3d 557, 567 (7th Cir. 1997) (a district court does not lose its discretion to impose a sentence of restitution merely because forfeiture is also ordered). Still, the rationale supporting restitution is not identical to the rationale underlying the forfeiture provisions of RICO. Addressing restitution and forfeiture under 21 U.S.C. § 853(a), Justice Blackmun observed that restitution is not likely in the "typical" case of

a narcotics prostitution, "in which the property forfeited consists of derivative proceeds of illegal activity, rather than of stolen property that is readily traceable to a particular victim." *Caplin & Drysdale, Chtd. v. United States*, 491 U.S. 617, 640, n.6 (1989) (Blackmun, J., dissenting).

The fact that the government's evidence supports a claim for restitution of those monies and return of the funds to the victim (SOS) does not require the conclusion that pretrial forfeiture is appropriate. The government has repeatedly expressed its intent that the victim of CFR's alleged wrongdoing will stand first in line to recover available financial assets. This intention is commendable, but it does not permit the court to bypass the analysis of whether forfeiture is appropriate under the relevant RICO provisions.

### D. Category 3 and Category 5 Claims as Substitute Assets

Finally, the court notes CFR's argument that some or all of the assets restrained by this court's order actually consist of substitute assets, and are therefore not subject to forfeiture pursuant to a pre-trial restraining order. The court finds CFR's argument persuasive with respect to the Category 3 funds. The government refers to these as the "Non-Wage SOS Diverted Assets," and alleges that during the 1994 and 1998 Ryan campaigns, Fawell and others from the SOS Office diverted office resources and property to benefit CFR. (Government's Proffer at 17.) Among the items allegedly diverted for CFR use were an industrial shredder, reams of state purchased paper, state-paid parking spaces and parking stickers, state cell phones, state vehicles, and other SOS Office equipment and supplies. (*Id.* at 18.) The government has estimated the alleged diversions to total $13,974.52, and asserts that this is a conservative estimate of the SOS assets misused by CFR. (*Id.* at 19.)

The court reserves judgment but notes that if any of the categories of funds in the government's proffer represent substitute assets, Category 3 surely does. Section 1963(m) states that if any of the property cannot be located as a result of any act or omission of the defendant, the

15

court shall order forfeiture up to the value of the missing property. 18 U.S.C. § 1963(m). This language appears precisely applicable to the Category 3 assets. The government did not ask the court to seize the shredder, reams of paper, cell phones, or parking stickers. Presumably these items were used, lost or discarded by CFR or SOS employees. To estimate the value of these items and freeze that amount of money from CFR appears to the court to be an attempt to restrain substitute assets.

A similar argument can be made concerning the Category 5 funds. As noted earlier, it is undisputed that the raises and promotions never made their way directly into CFR's bank accounts. Even if the government successfully proves that the Category 5 assets are somehow tainted by illegal activities, they do not automatically become forfeitable under Section 1963(a). The Seventh Circuit pointed out that "[t]here will often, it seems to us, be property falling somewhere in between, property which may be suspected of being tainted but which the government cannot prove is derived from racketeering activity. We are convinced that such property can be forfeited *under §* *1963(m).*" *United States v. Infelise,* 159 F.3d 300, 305 (7th Cir. 1998) (emphasis supplied). In this court's view, the $455,931.66 identified in Category 5 may well be most accurately described as a representation of or a substitute for the value of the raises and promotions given to SOS employees.

## CONCLUSION

As explained earlier, CFR has not yet made the showing required by *Moya-Gomez*, that the pre-trial restraint compromises its Sixth Amendment right to counsel. CFR has, however, made substantial arguments concerning the second prong of the burden it faces on this motion. Without making final determinations on the issues involved, the court concludes, for the reasons described above, that if CFR makes the showing required by *Moya-Gomez*, the court is inclined to lift the restraint on funds represented by the Category 3 assets and on some or all of the funds represented by Category 5.

ENTER:

Dated: February 18, 2003

REBECCA R. PALLMEYER
United States District Judge